UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **FRANK BISIGNANO and FIRST DATA CORPORATION,** <br>              Plaintiffs, <br> v. <br> **ERIC INSELBERG and INSELBERG INTERACTIVE, LLC,** <br>              Defendants. | Civ. No. 15-8301 (KM) (JBC) <br><br> **(Not Consolidated)** |
| **ERIC INSELBERG and INSELBERG INTERACTIVE, LLC,** <br>              Plaintiffs, <br> v. <br> **FRANK BISIGNANO and FIRST DATA CORPORATION,** <br>              Defendants. | Civ. No. 16-317 (KM) (JBC) <br><br> **OPINION** |

**MCNULTY, U.S.D.J.:**

    Welcome to the hall of mirrors. These two actions arise from the same set of facts. The first is a preemptive action for a declaratory judgment under the patent laws, and the second is a removed state court action asserting claims solely under state law. Each party purports to accept the other's position *arguendo* (but not really), in an attempt to trap it into an adverse ruling.

    Frank Bisignano and First Data Corporation ("First Data") filed first, seeking a declaratory judgment in Civ. No. 15-8301. That action seeks to preempt what they regard as an inevitable claim by Eric Inselberg and Inselberg Interactive ("Interactive") of patent infringement. The complaint seeks a declaration that Bisignano validly owns the patents by virtue of an assignment from Interactive, and that he validly licensed them to First Data. First Data asserts that it would therefore win any infringement action brought

1

by Inselberg and Interactive, who do not own the patents. (I will call this the "declaratory judgment case.")

As it turns out, however, Inselberg and Interactive acknowledge that they are not now the owners of the patents. They agree that they do not currently possess standing to sue for infringement. Indeed, they admit that they assigned the patent portfolio to Bisignano in connection with a $500,000 business loan. Thus, nine days after the declaratory judgment action was filed, Inselberg and Interactive filed their own complaint in New Jersey Superior Court, asserting no patent claims but only state law causes of action. This complaint alleges that Frank Bisignano mishandled and failed to exploit the assigned patents, the proceeds of which were intended to be applied to Inselberg's loan balance. That complaint also seeks a declaratory judgment that the assignment was invalid under state law. Bisignano and First Data answered that complaint and asserted four counterclaims, which overlap the patent-based claims in their previously filed declaratory judgment action. Invoking the federal courts' exclusive jurisdiction over patent claims, they simultaneously removed the action from state court to this Court, where it was assigned Civil No. 16-317. (I will call this the "removed case.")

In the declaratory judgment case, Inselberg has moved to dismiss the complaint for lack of federal subject matter jurisdiction and standing, pursuant to Fed. R. Civ. P. 12(b)(1), and also for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). In the removed case, Inselberg has moved to remand the case to state court, likewise for lack of subject matter jurisdiction, pursuant to 28 U.S.C. § 1447(c), and also has moved to dismiss the counterclaims on jurisdictional and substantive grounds.

For the reasons stated below, I will grant the motions to dismiss the declaratory judgment complaint and the counterclaims in the removed action. Because the patent claims are contingent upon Inselberg and Interactive prevailing on their state law claims, they do not currently give rise to federal court jurisdiction.

## I. BACKGROUND

### A. The Removed Case

The removed case, although filed second, has the parties in their natural configuration as plaintiffs (Inselberg and Interactive) and defendants (Bisignano and First Data). It is therefore convenient to summarize it first.

#### 1. Complaint in removed case

On December 4, 2015, Inselberg filed a Complaint in New Jersey Superior Court, Hudson County (HUD-L-04954-15). The factual allegations of the Complaint, in outline, are as follows.

Plaintiff Eric Inselberg is the inventor of various systems by which audiences would interact with live events such as concerts and football games. His many patents were actually held by co-plaintiff Interactive. Defendant Frank Bisignano is in the financial services industry. Since April 2013, he has been the CEO of defendant First Data. (RCplt. ¶¶ 7–10)[1]

Inselberg discussed with Bisignano the exploitation of his patents. In August 2010, Inselberg obtained from Bisignano a $500,000 loan. As collateral, Inselberg pledged the patent portfolio, as well as certain sports memorabilia. The borrower was Interactive, with Inselberg as guarantor. (RCplt. ¶¶ 24–38)

In October 2011, criminal charges were brought against Inselberg, impairing his ability to transact business. Inselberg and Bisignano entered into an agreement whereby the entire active patent portfolio was conveyed from Interactive to Bisignano (the "Assignment Agreement"). That Assignment Agreement recited that it was, *inter alia*, "in partial satisfaction of the indebtedness." Bisignano orally promised that Inselberg could take the patents

---

[1] The following abbreviations are used herein:
DECF = Docket in declaratory judgment case, Civ. No. 15-8301
DCplt. = Amended Complaint in declaratory judgment case, DECF no. 8
RECF = Docket in removed case, Civ. No. 16-317
RCplt. = Complaint in removed case, RECF no. 1-1 at 6
RCCl. = Counterclaims in removed case, RECF no. 1-2 at 25

3

back if and when the criminal case was resolved. In late winter 2013, Bisignano instructed Anthony Hayes, an IP consultant, to sell off the portfolio. On April 28, 2013, the criminal charges were dropped. Bisignano did not return the patent portfolio, but assured Inselberg that he was in the best position to monetize it, and would do so. (RCplt. ¶¶ 39–57)

Post-assignment, Bisignano allegedly failed to take reasonable steps to preserve the value of the patents (*e.g.*, by paying USPTO fees and making necessary filings) or to exploit their value (*e.g.*, by pursuing potential infringement claims and licensing opportunities). This had the effect of hampering Inselberg's efforts to repay the loan. (RCplt. ¶¶ 58–74)

The patents remain in the name of Bisignano personally. In making decisions about the patents, Bisignano has used First Data's in-house counsel, Ralph Shalom and Adam Rosman. Potential monetization deals have been considered and rejected based on the business needs of First Data. (RCplt. ¶¶ 75–81) Bisignano also allegedly tricked Inselberg into turning over additional sports memorabilia, and remains in possession of items having a value in excess of what was contemplated by the loan agreement. (RCplt. ¶¶ 82–91)

In a conference call on June 3, 2014, Bisignano stated that the assignment of the patents was not in "partial satisfaction" of the loan. He claimed that he had gotten no financial benefit from the patents, and that the entire loan balance therefore remained outstanding. (RCplt. ¶¶ 92–101) On October 31, 2014, Inselberg proposed that First Data purchase or license the patents. On November 14, 2014, Bisignano granted First Data a license to use, sell, and offer to sell the inventions claimed in the patents (the "First Data License"). This, however, is a free license; it requires no royalty payments. (RCplt. ¶¶ 102–22) Bisignano has also threatened to sell off the sports memorabilia in his possession at "fire sale" prices. (RCplt. ¶¶ 123–33)

The Complaint in the removed case asserts ten state law causes of action:

4

> Count I     Commercially Unreasonable Disposition of Collateral in Violation of N.J.S.A. 12A:9-610
>
> Count II    Failure to Provide Notification in Violation of N.J.S.A. 12A:9-611
>
> Count III   Breach of Fiduciary Duty
>
> Count IV   Breach of the Duty of Care in Violation of N.J.S.A. 12A:9-207 and Common Law
>
> Count V    Breach of the Covenant of Good Faith and Fair Dealing
>
> Count VI   Declaration as to the Assignment Agreement
>
> Count VII  Declaration as to No Final Settlement of Ownership Dispute
>
> Count VIII Conversion
>
> Count IX   Aiding and Abetting Breach of Fiduciary Duty and Conversion
>
> Count X    *Respondeat Superior* Liability

       **2.**    **Counterclaims in removed case**

On January 19, 2016, defendants filed an Answer generally denying the allegations and asserting various affirmative defenses. The Answer includes a four-count Counterclaim, asserted by First Data only.

The Counterclaims supplement the factual allegations as follows. The Assignment Agreement, dated April 2, 2012, followed Inselberg's default on the loan. It superseded the status of the patents as mere pledged collateral, and effected a complete and unconditional transfer to Bisignano. (RCCl. ¶¶ 4–10) Inselberg's proposal that First Data license the patents was accompanied by an assertion that First Data was in fact practicing the patents, and was therefore infringing. Bisignano, as owner of the patents, executed the First Data License in order to cut off any such claim of infringement. (RCCl. ¶¶ 11–15)

In February 2015, the parties attempted to resolve their disputes. One outstanding issue was a prior license between Inselberg and Interactive, which allegedly would have undercut a representation in the 2012 Assignment that there had been no prior transfer of rights. The parties signed an agreement to terminate that prior license (the "Termination Agreement"). The Termination

Agreement, dated February 24, 2015, allegedly acknowledges the 2012 Assignment free and clear to Bisignano. (RCCl. ¶¶ 16–19)

According to the Counterclaims, Inselberg continues to claim that the 2012 Assignment was invalid, that Bisignano's license to First Data is invalid, and that Inselberg is the true owner of the patents. (RCCl. ¶ 20)

The Counterclaim has four Counts:

| | |
|---|---|
| Count One | Claim by First Data Against Plaintiffs for Declaratory Judgment as to Ownership of the Patents |
| Count Two | Claim by First Data Against Plaintiffs for Declaratory Judgment as to the Validity of the First Data License |
| Count Three | Claim by First Data Against Plaintiffs for Declaratory Judgment as to Noninfringement of the Patents |
| Count Four | Claim by First Data Against Plaintiffs for Declaratory Judgment as to Invalidity of the '975 Patent |

### 3. Removal and subsequent procedural history

On January 19, 2016, the same day that Bisignano and First Data filed their Answer and Counterclaims, they removed the state court action to this court. The Notice of Removal ("Notice", RECF no. 1) invoked this federal court's jurisdiction over patent cases, citing 28 U.S.C. §§ 1338, 1441(a), 1446, and 1454(a). In particular, the Notice relied on Inselberg's seeking of reasonable royalty patent damages, asserting that his state law claims therefore turned upon questions of federal patent law. (Notice at p. 3) In addition, the defendants sought removal based on their own counterclaims, which, they stated, arose under patent law. (Notice at p. 5)

### B. The Declaratory Judgment Case

The original complaint in the declaratory judgment case was filed by Bisignano and First Data on November 25, 2015. The First Amended Complaint (the currently operative pleading, referred to herein as the complaint), was filed on December 26, 2015. The declaratory judgment case has much in common with the declaratory judgment counterclaims in the

removed action. (*See* Section I.A.2, *supra*.) I therefore summarize it more briefly.

The action is brought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. Jurisdiction is asserted under 28 U.S.C. §§ 1331 and 1338 as to the patent claims, and ancillary jurisdiction is asserted under 28 U.S.C. § 1367 as to related state law claims. (DCplt. ¶ 5)

The complaint relates the particulars of the $500,000 loan from Bisignano to Interactive and Inselberg, attaching the relevant agreements. (DCplt. ¶¶ 9–14) It lists the 22 patents in the Inselberg portfolio that were pledged as collateral and later assigned outright. (*Id.* ¶¶ 15, 46–67)

The complaint alleges that Interactive defaulted on the loan payments. The parties then entered into the April 2, 2012 Assignment Agreement "whereby Interactive and Inselberg assigned the Inselberg patents to Bisignano in partial payment and satisfaction of interactive's indebtedness under the Loan Documents." (DCplt. ¶ 17) This agreement effected a complete and unconditional transfer of the portfolio to Bisignano, who then became the owner of all right, title and interest in the patents. (*Id.* ¶¶ 19, 23) That transfer was confirmed by the February 24, 2015 License Termination Agreement. (*Id.* ¶¶ 25–27)

Nevertheless, in a series of meetings and communications beginning on October 31, 2014, Inselberg claimed that the assignment was invalid, that First Data was practicing (and therefore infringing) the patents, and that First Data should seek a license. (DCplt. ¶¶ 28–30) Bisignano disagreed with those contentions, but to cut off any possible claim, granted a royalty-free license to First Data. (*Id.* ¶ 32) In December 2014, through counsel, Inselberg continued to maintain that the assignment was invalid and that Bisignano lacked the power to license the patents without Inselberg's consent. (*Id.* ¶¶ 33–34)

On September 18, 2015, Inselberg's counsel again wrote to First Data, stating that the 2012 Assignment had "severe problems" and was "likely void" under New Jersey state law. He took issue with Bisignano's failure to monetize

7

the patents and threatened to sue both Bisignano and First Data based on the grant of a free license. (DCplt. ¶ 35) In a followup email, counsel claimed that First Data was infringing and stated that Bisignano was liable for damages "amounting to at least 1/3 of the fair market value of the license." (*Id.* ¶ 36)

On October 9, 2015, counsel sent Bisignano and First Data a draft state-court complaint (presumably in an attempt to promote a settlement). (DECF 11-1 at 4) This draft complaint asserted a number of state law causes of action, and alleged that the Assignment Agreement and License were invalid. It sought a declaration that Interactive and Inselberg were the true owners of the patents, and were entitled, *inter alia,* to sue for infringement. (DCplt. ¶¶ 37–39) This draft complaint also included one federal-law claim against Perka, a First Data subsidiary, for infringement of one of the patents (the "'975 patent"). (*Id.* ¶ 40; *see* DECF 11-1 at 39)[2]

On November 19, 2015, counsel sent a second draft state-court complaint. (DCplt. ¶ 41; *see* DECF 11-1 at 63) This version of the draft complaint did not contain any claim of patent infringement. It did, however, include claims for damages measured by (*inter alia*) reasonable royalties that should have been received under the free license to First Data. (*Id.* ¶¶ 43–44) Counsel stated an intent to file the draft complaint on November 30, 2015 unless a settlement was reached.

---

[2]    Although the draft complaint is captioned as one to be filed in New Jersey Superior Court, it includes one claim of patent infringement, as to which the federal courts have exclusive jurisdiction. 28 U.S.C. § 1338(a) ("No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents...."). It seems that this October draft complaint was intended, not as the final version of a pleading for filing, but rather as a demonstration of seriousness or a threat (empty or not), to stimulate settlement. At any rate, the infringement claim was dropped in the next draft, as well as the final version of the complaint that was filed in state court.

On November 25, 2015, Bisignano and First Data responded by preemptively filing the original complaint in the declaratory judgment action. (DECF no. 1)[3] That complaint (as amended) contains four counts:

| | |
|---|---|
| Count One | Plaintiffs' Claim for Declaratory Judgment as to Ownership of the Inselberg Patents (DCplt. ¶¶ 68–74) |
| Count Two | Plaintiffs' Claim for Declaratory Judgment as to the Validity of the First Data License (DCplt. ¶¶ 75–81) |
| Count Three | First Data's Claim for Declaratory Judgment as to Noninfringement of the Inselberg Patents (DCplt. ¶¶ 82–89) |
| Count Four | Bisignano's Claim for Breach of Contract (DCplt. ¶¶ 90–94) |

It is apparent that Counts One, Two, and Three substantially duplicate the Counterclaims in the removed action. (*See* Section I.A.2, *supra*. The Counterclaims, however, are asserted only by First Data, not by Bisignano.) Count Four, a state law claim of breach of contract, is essentially based on the default of the $500,000 loan and alleged interference with Bisignano's ability to dispose of the collateral.

### C. Motions Now Before the Court

Currently before the Court are three motions:

(a) Motion to dismiss the Complaint in the declaratory judgment case, filed January 8, 2016. (DECF no. 9)

(b) Motion to remand the removed case to state court, filed February 18, 2016 (RECF no. 8)

(c) Motion to dismiss the Counterclaims in the removed case, filed February 24, 2016. (RECF no. 9)[4]

---

[3] This anticipated by nine days the December 4, 2015, filing by Inselberg and Interactive of the final version of the state-court complaint in the removed action, which did not contain any patent infringement claim. (*See* Section I.A.1, *supra*.)

[4] On February 9, 2016, Bisignano and First Data filed a fourth motion, this one to dismiss the complaint in the removed case. (RECF no. 6) On March 7, 2016, I entered an order in the removed case staying briefing on both sides' motions to dismiss pending resolution of the remand issue. (RECF no. 14) Later, however, to ensure full consideration of issues that overlap between the Counterclaims and the

9

## II. DISCUSSION

### A. Standards Governing Patent Jurisdiction and Remand

Defendants removed this case pursuant to the federal removal statute, 28 U.S.C. § 1441. "[T]he party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court." *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007). Removal is strictly construed and doubts are resolved in favor of remand. *See Samuel–Bassett v. Kia Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004). Under 28 U.S.C. § 1441(a), a defendant may remove a civil action from the state court if the case could have been brought originally in federal court.

Under 28 U.S.C. § 1338(a), a district court has original and exclusive jurisdiction over "any civil action arising under any Act of Congress relating to patents...."[5] A patent claim, explicitly brought as such, is of course one "arising under" the patent laws; it is created by federal patent law, and therefore is properly brought in, or removed to, federal court. *See* 28 U.S.C. §§ 1338(a), 1454(a). One example of such a claim is an action by a patentee claiming infringement. Another is a mirror-image action against the patent holder, seeking a declaration of noninfringement or invalidity. *See Medtronic, Inc. v. Mirowski Family Ventures, LLC*, __ U.S. __, 134 S. Ct. 843, 848–89 (2014).

The plaintiff, of course, is the "master of his complaint" and can choose whether he wishes to assert a federal cause of action. *See Wood v. Prudential Ins. Co. of Am.*, 207 F.3d 674, 677-78 (3d Cir. 2000). Labels, however, are not controlling. "The fact that a cause of action has been couched in terms of patent infringement is not dispositive as to whether the case arises under the patent laws." *Air Products and Chemicals, Inc. v. Reichhold Chemicals, Inc.*, 755

---

declaratory judgment action, I lifted the stay on the motion to dismiss Counterclaims. (RECF no. 20) That motion is now fully briefed. (*See* RECF nos. 9, 21, 22).

5    The court also has jurisdiction over cases that "arise under" federal law. 28 U.S.C. § 1331. There is no contention that the parties are of diverse citizenship. *See* 28 U.S.C. § 1332.

F.2d 1559, 1561 (Fed. Cir. 1985). In short, calling a state law claim a patent claim does not make it so, or create federal jurisdiction.

On the other hand, calling a patent claim a state law claim does not make it so, or rob a federal court of jurisdiction. Thus a federal patent claim may be implied, even if not labeled as such. The notice of removal here asserts that the state law claims of Inselberg and Interactive are in reality patent claims. It cites *Grable & Sons Metal Prods. v. Darue Engineering & Mfg.*, 545 U.S. 308, 312, 125 S. Ct. 2363, 2366–67 (2005), which holds that federal jurisdiction may exist where a state law claim "implicate[s] significant federal issues." A federal court may possess such jurisdiction where "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, __ U.S. __, 133 S. Ct. 1059, 1064 (2013 (citing *Grable, supra*). Cases that satisfy the *Grable* test, however, make up a "special and small category." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699, 126 S. Ct. 2121, 2136 (2006).

Bisignano and First Data argue in addition that these cases belong in federal court because their counterclaims (in the removed case) and claims (in the declaratory judgment case) raise issues of patent law. As a result of a statutory amendment in 2011, patent counterclaims may give rise to federal jurisdiction: "A civil action in which *any party* asserts a claim for relief arising under any Act of Congress relating to patents ... may be removed to the district court of the United States for the district and division embracing the place where the action is pending." 28 U.S.C. § 1454(a) (emphasis added).[6] *See also*

---

[6] In analyzing federal subject matter jurisdiction, the courts have traditionally looked to the "well-pleaded complaint" rule. That rule holds that a cause of action "'arises under' federal law, and removal is proper, only if there is a federal question presented on the face of the plaintiff's properly pleaded complaint." *DeJoseph v. Continental Airlines, Inc.*, 18 F. Supp. 3d 595, 599 (D.N.J. 2014) (citing *Dukes v. U.S. Healthcare*, 57 F.3d 350, 353 (3d Cir. 1995)). In *Holmes Group v. Vornado Circulation Systems, Inc.*, 535 U.S. 826, 830, 122 S. Ct. 1889, 1893 (2002), the Supreme Court held that the well-pleaded complaint rule, applicable to general federal question jurisdiction under 28 U.S.C. § 1331, applied equally to patent jurisdiction under 28

*Masimo Corp. v. Mindray DS USA, Inc.,* No. 14-cv-405, 2015 WL 93759 at *3 (D.N.J. Jan. 7, 2015) (statute now "allow[s] federal patent law counterclaims to serve as a basis for removal to federal court"). And the declaratory judgment action posits, or anticipates, claims of patent infringement on behalf of Inselberg and Interactive. It follows that, in determining whether an action was properly filed in or removed to this Court, both claims and counterclaims may be relevant.

### B. Claims of Inselberg and Interactive in the Removed Case

The claims asserted by Inselberg and Interactive in the removed case do not arise under the patent laws in any obvious or straightforward manner. Counts I, II, and IV, for example, arise under the Uniform Commercial Code. Other counts seek damages for breach of fiduciary duty, breach of contract, or conversion. Still others seek declarations that the Assignment Agreement was not valid under state law, that Bisignano's license to First Data is therefore invalid, or that Bisignano has no valid ownership interest in the sports memorabilia. These are all state law claims; the underlying rights at issue are property rights created by state statutory and common law.

But wait, say Bisignano and First Data. The Assignment being challenged is an assignment that conveyed ownership of patents. The alleged mismanagement of collateral consisted of failure to exploit patents, and the grant of a free patent license to First Data. And the damages sought consist, at least in part, of patent license fees or patent royalties that should have been, but were not, realized and applied to reduce Inselberg's debt. Embedded in Inselberg's state law claims, according to defendants, are issues of patent law that can only be decided by a federal court. They say that the complaint therefore satisfies the four-part test of *Grable,* cited above, which requires that a federal issue be (1) necessarily raised, (2) actually disputed, (3) substantial,

---

U.S.C. § 1338. It was in response to *Holmes* that Congress, in the Leahy–Smith America Invents Act, Pub. L. No. 112-29, § 19(c)(1), 125 Stat. 332 (2011), added the so-called "*Holmes Group* Fix," which included the language of 28 U.S.C. § 1454(a) cited in text above. H.R. Rep. No. 112-98, at 81 (2011).

and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. I remain unpersuaded.

In *Grable*, the IRS seized Grable's property to satisfy a tax delinquency and sold it to the respondent, Darue. Grable brought an action in state court to quiet title, claiming that Darue's title was invalid because the notice of sale given by the IRS was invalid under 26 U.S.C. § 6335. *See Grable*, 545 U.S. at 315, 125 S. Ct. at 2368. There, the interpretation of the federal statute was both essential and logically prior to the issue of title under state law: if notice was legal under 26 U.S.C. § 6335, Darue's title was good; if not, not. The Supreme Court therefore found that the federal court had jurisdiction, based on "the national interest in providing a federal forum for federal tax litigation." 545 U.S. at 310, 125 S. Ct. at 2365. Here, by contrast, the state law issues—the validity or not of the assignment, for example—do not depend on the outcome of any federal law issue. Indeed, it is the other way around; unless Inselberg prevails on his state law claims and regains ownership of the patents, he cannot possess a federal claim of infringement.

To look at it from another angle, although the property in question happens to consist of a patent portfolio, patent-law issues are not "necessarily raised," "actually disputed," or "substantial" Rather, they are incidental and contingent. Inselberg is not currently the owner of the patents, and is not suing as a patentee. *See* 35 U.S.C. § 281 ("A patentee shall have remedy by civil action for infringement of his patent.") He does not seek damages for infringement, or sue for a declaration of patent validity. The rights in question are ownership rights, determined by state law.

Nor does this become a patent case merely because Inselberg claims that his damages (or some of them) should be measured by forgone royalties. The claim here is that Bisignano mishandled property, *e.g.,* by giving his company, First Data, rights to exploit the patents free of charge. Inselberg concedes that he assigned away the patents; Bisignano, not Inselberg, owns any cause of

action for infringement.[7] Nor does, or can, Inselberg currently assert a claim that First Data infringed; as things stand, First Data indisputably has a license from Bisignano. Inselberg's claims are distinct: for example, that Bisignano should have charged First Data for the license, rather than award it for free (and that resulting royalties could have, *inter alia*, paid down Inselberg's debt to Bisignano).[8]

At its heart, then, this is a state law case. Viewed one way, it is a dispute over the validity of an Assignment Agreement. Viewed another way, it is a debtor's rights cause of action against Bisignano. But it does not require adjudication of any issue of patent law. Indeed, many non-patent causes of action may involve patents in some manner. A patent portfolio might need to be evaluated in a divorce case; a patent certificate might be stolen; a royalty check might be cashed over a forged endorsement. Such a case, however, sounds in state law, not patent law. Here, although a reasonable royalty might be one measure of damages, it is not the source of the cause of action.

That is not to say that the issue is black and white, or that it can never be a question of degree. The case law, however, offers some guidance. It appears to draw the line where the plaintiff is not currently the patent owner and does not sue on that basis.

Where plaintiff's claim is that the court *should* award him ownership, after which he hypothetically *would* be empowered to pursue claims as a patentee, patent jurisdiction does not attach. In 2012, the Federal Circuit reaffirmed that long-established principle:

---

[7]  One point heading in Inselberg's brief in support of the motion to dismiss the Counterclaims, for example, is titled "It is Undisputed that Bisignano Currently Has All Rights and Title to the Patents, Including the Exclusive Right to Sue." (RECF no. 9-1 at 8)

[8]  Inselberg is not technically suing to adjust the rights of Bisignano and First Data vis-à-vis each other. Presumably, whether Bisignano in fact recoups those theoretical royalties from First Data is of no particular interest to Inselberg, provided that he is credited for what he regards as his share. And any liability of First Data to Inselberg (as opposed to Bisignano) is at best derivative, vicarious, and contingent.

14

> [T]his case falls squarely within our precedent holding that a claim for patent infringement does not arise under the patent laws when it requires judicial action to vest title in the party alleging infringement. *See Jim Arnold Corp. v. Hydrotech Sys., Inc.,* 109 F.3d 1567, 1572 (Fed. Cir. 1997) (finding that, if a plaintiff does not own a patent absent judicial intervention voiding a patent assignment, "federal court is not the place to seek that initial judicial intervention")....

*Nolen v. Lukin Industries, Inc.,* 466 F. App'x 895, 899 (Fed. Cir. 2012) (citing *Larson v. Correct Craft, Inc.,* 569 F.3d 1319, 1327 (Fed. Cir. 2009) (finding no standing to sue for correction of inventorship because, "[w]ithout first voiding his patent assignments, [plaintiff] has no ownership interest in the ... patents.")).

In the cited *Jim Arnold* case, the plaintiff attempted to assert an infringement claim. That claim, however, was contingent upon the success of the plaintiff's state law claims that its prior assignment of the patents was void. Thus the Federal Circuit held that jurisdiction was lacking:

> Until ownership is restored in the assignor, there can be no act of patent infringement by the assignee. Federal question jurisdiction must exist at the time the complaint is filed for a federal court to exercise authority over the case [citation omitted], and without first receiving equitable relief that restores to the assignor title to the patent, any claim of ownership by the assignor will be unfounded. Further, because an action to rescind or cancel the assignment is a state-law based claim [citation omitted], absent diversity jurisdiction it is to a state court that plaintiffs must look in seeking a forfeiture of the license.

109 F.3d at 1577.

The *Jim Arnold* holding was of jurisdictional stature. Although that plaintiff (unlike Inselberg) purported to assert an infringement claim, the court nevertheless concluded that it "fail[ed] to present a nonfrivolous allegation of ownership of the patents at issue sufficient to confer jurisdiction on the district court pursuant to 28 U.S.C. § 1338." *Id.* at 1578. *See also Nolen,* 466 F. App'x at 901 ("Plaintiffs have failed to make any plausible allegations of ownership of the patents at issue that do not first require judicial intervention.").

15

Inselberg concedes that Bisignano, not he, owns the patents as a result of the Assignment Agreement. And Inselberg (unlike the plaintiff in *Jim Arnold*) does not even attempt to assert a contingent or alternative claim of infringement. Should Inselberg win his state action, and should the relief include revocation of the Assignment, Inselberg might pursue patent law claims. For the present, however, for "equitable relief that restores to the assignor title to the patent," or for "forfeiture of the license"—the very relief sought here—"it is to a state court that plaintiffs must look." *Jim Arnold*, 109 F.3d at 1577. Inselberg and Interactive could not now invoke this court's patent jurisdiction because, as a prerequisite, it first "requires judicial action to vest title in the party alleging infringement." *Nolen*, 466 F. App'x at 899.

Inselberg and Interactive are not now pursuing a cause of action that arises under the patent laws, and they cannot do so unless they first prevail on some or all of their state law claims. Under the rule of *Jim Arnold*, such a contingent patent claim—assuming one could be read between the lines of this complaint—would not give rise to federal jurisdiction.

### C. Counterclaims/Declaratory judgment action

I move to the claims of Bisignano and First Data in the declaratory judgment action, and their overlapping declaratory judgment Counterclaims in the removed case.[9]

A declaratory judgment plaintiff stands in the shoes of a defendant; it is preemptively defending itself against an anticipated claim. Thus a court will look past the declaratory procedural mechanism and consider whether a well-pleaded complaint asserting that anticipated claim would create federal jurisdiction. *Franchise Tax Bd. Of State of Cal. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 15-16, 103 S. Ct. 2841, 2849–50 (1983). *See also Microsoft Corp. v. GeoTag, Inc.*, 817 F.3d 1305 (Fed. Cir. 2016). In effect, the court will

---

9   Because the Counterclaims were filed during this case's brief sojourn in state court, they cite the New Jersey declaratory judgment statute, N.J. Stat. Ann. §§ 2A:16-50 to -62. I analyze both sets of claims, however, under the federal Act. The parties point to no significant difference between the two.

16

notionally realign the parties into their natural configuration as plaintiff and defendant.

Would this court have jurisdiction over a patent infringement complaint brought by Inselberg or Interactive as plaintiffs? Clearly not; those two parties could not now invoke this court's jurisdiction. The cause of action belongs to the person with an enforceable title to the patent—here, Bisignano or First Data. "[O]nly a patent owner or an exclusive licensee can have constitutional standing to bring an infringement suit." *Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.,* 620 F.3d 1305, 1317 (Fed. Cir. 2010); *see also Tyco Healthcare Group, LP v. Ethicon Endo-Surgery, Inc.,* 587 F.3d 1375, 1378 (Fed. Cir. 2009). A complaint, to even minimally set forth jurisdiction under 28 U.S.C § 1338, must contain "an allegation of ownership of the patents at issue" by the plaintiff. *Jim Arnold,* 109 F.3d at 1578. *See* discussion at Section I.B, immediately preceding.[10]

There is no such allegation here. The declaratory judgment complaint alleges that "Bisignano owns the entire right, title and interest in and to the Inselberg Patents." (DCplt. ¶ 72) Likewise, the Counterclaims in the removed case allege that "Bisignano owns the entire right, title and interest in and to the Patents as set forth in both the Assignment Agreement and the Assignment. Bisignano therefore had the full right and title to grant the First Data License." (RCCl. ¶ 34) For their part, Inselberg and Interactive admit that, as things now stand, Bisignano is the patent owner. Only through judicial intervention—specifically, adjudication of the state law claims in Inselberg's favor—would that cease to be the case. Under *Jim Arnold,* discussed above, that circumstance defeats federal jurisdiction.

Can Bisignano and First Data, by officiously asserting against themselves patent claims on behalf of Inselberg and Interactive, turn this into a

---

[10] Inselberg and Interactive sometimes analyze the case in terms of standing and ripeness. Because statutory jurisdiction provides a clear, well-marked path, there is less need to hack through the thickets of constitutional standing or a prudential zone-of-interests analysis. *See generally Maher Terminals, LLC v. Port Authority of NY and NJ,* 805 F.3d 98, 104–06 (3d Cir. 2015).

patent case? Here, too, the *Jim Arnold* principle must govern. Any claim of Inselberg and Interactive under the patents depends on prior "judicial intervention"—for example, a finding under state law that the Assignment to Bisignano was void. Surely the *Jim Arnold* holding is not distinguishable, but applies *a fortiori*, where (a) the defendant asserts a mirror-image claim for a declaratory judgment of *non*–infringement (b) against a party that admits it has no ownership interest unless it prevails on its state law claims, and (c) pending such a determination, does not even purport to assert any patent-law claim.

Counterclaim count 4, which seeks a declaration of invalidity of the '975 patent, may seem to stand on a different footing, but it does not. Recall that Bisignano currently owns this patent, and his corporation, First Data, is the licensee of it, a privilege for which it concededly pays nothing. A claim of invalidity thus does not seem to currently set forth a concrete controversy at all.[11] This claim of invalidity, like the others, is really aimed at Interactive and Inselberg, who are waiting in the wings. It is premised on the allegation that "Interactive and Inselberg have alleged that the Assignment Agreement and the First Data License are null and void"; "that Interactive is and has been the owner of the Patents: and that "Interactive and Inselberg have further alleged that First Data has infringed the Patents." (RCCl. ¶¶ 46–47) In short, it is a contingent claim, reliant on Inselberg's and Interactive's state law claim of ownership, which will have no real-world consequences unless and until a court upholds it.

Bisignano and First Data stress that, in a declaratory judgment action, the court must consider the patent cause of action that Inselberg and Interactive *threatened* to bring. Such a threat is necessary, but not sufficient;

---

[11] This claim is brought only by First Data. (Presumably, an action by Bisignano to invalidate his own patent seemed a step too far, even in the topsy-turvy world of a contingent declaratory judgment action.) Read as a claim between First Data and Bisignano, closely related parties who are represented by the same counsel and agree that they are the licensee and owner of the patent, it would smack of a collusive attempt to create jurisdiction. I do not, however, read the claim that way. It is nevertheless unusual to find First Data seeking to invalidate a patent owned by its CEO and enjoyed by itself at no cost.

this court sits to litigate concrete controversies, not threats and perceptions. Thus a court considering its jurisdiction "must look to the nature of the action that the declaratory judgment defendant ... *could have brought* in the absence of a declaratory judgment." *Medtronic,* 134 S. Ct. at 848 (emphasis added). It would be a mistake, I think, to rely too heavily on anticipated claims, when the threatened lawsuit has materialized and does not in fact include those claims. But it is not just that Inselberg and Interactive *did not* file patent claims; they admit that they *could not.*

This Court lacks jurisdiction over the claims asserted by Inselberg and Interactive in the removed case, as well as those asserted by Bisignano and First Data as counterclaims in the removed case and as claims in the declaratory judgment action. Accordingly, the motion to dismiss the complaint in the declaratory judgment action is granted, and the motion to remand the removed case to state court is likewise granted.[12]

### D. Failure to State Claim for Declaratory Judgment

In the alternative, Inselberg and Interactive have moved to dismiss the declaratory judgment claims for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). In light of the foregoing jurisdictional dismissal, that portion of the motion will be denied as moot.[13]

---

[12] Because we are at the early stages of litigation, I find no substantial federal issue, and state claims predominate, I will not exercise my discretion to retain supplemental jurisdiction over state law claims. *See* 18 U.S.C. § 1367(c).

[13] Even if the Court possessed jurisdiction, many of the concerns raised in the preceding sections would lead me to exercise my discretion to decline to entertain a declaratory judgment claim. The language of the Declaratory Judgment Act is discretionary; a district court "may declare the rights and other legal relations of any interested party seeking such declaration...." 18 U.S.C. § 2201. *See Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 494, 62 S. Ct. 1173, 1175 (1942) (although district court had jurisdiction under the Act, "it was under no compulsion to exercise that jurisdiction," and a motion to dismiss was "addressed to the discretion of the court"). Relevant factors include whether the issues can better and completely be adjudicated in state court, whether all parties can be served and joined there, avoidance of duplicative litigation and forum shopping, and so on. *See Reifer v. Westport Ins. Corp.,* 751 F.3d 129, 146 (3d Cir. 2014). Unless the state law issues were disposed of, this court would find itself in the position of rendering an impermissible advisory opinion as to patent issues. I therefore note, for purposes of completeness, that I would likely

19

## CONCLUSION

<u>In Civ. No. 15-8301</u>

For the reasons stated above, the motion of Inselberg to dismiss the complaint in Civ. No. 15-8301 for lack of jurisdiction (DECF no. 9) is GRANTED.

<u>In Civ. No. 16-317</u>

For the reasons stated above, the motions (RECF nos. 8 & 9) of the plaintiffs, Inselberg and Interactive, in Civ. No. 16-317 to dismiss the Counterclaims for lack of jurisdiction and to remand the case under 28 U.S.C. § 1447(c) are GRANTED. This case will be remanded to the Superior Court of New Jersey, Hudson County, where it was assigned docket no. HUD-L-04954-15. The pending motion of Bisignano and First Data to dismiss the Complaint in the removed case (RECF no. 6) is administratively terminated without prejudice to renewal in state court.

This opinion will be filed in both cases, and an appropriate order will be filed in each case. The clerk shall close the files.

Date: August 25, 2016

_____
KEVIN MCNULTY
United States District Judge

---

grant the motions to dismiss the declaratory judgment claims and decline to exercise supplemental jurisdiction over the state law claims. The result, by this alternative procedural route, would be the same as that I reach *via* the jurisdictional analysis above.